UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| MUHAMMAD AQEEL ASLAM, a U.S. citizen, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF STATE; U.S. EMBASSY IN ISLAMABAD, PAKISTAN; ANTONY BLINKEN, United States Secretary of State; and DONALD BLOME, Ambassador of the United States at the U.S. Embassy in Islamabad, Pakistan, <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO DISMISS (DOC. NO. 28)** <br><br><br><br> Case No. 2:22-cv-00701 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Muhammad Aqeel Aslam, a United States citizen, filed an I-130 visa petition on behalf of his wife, Aneesa Idrees, a citizen of Pakistan, on March 16, 2020.[1]  On November 3, 2022, Mr. Aslam filed this action seeking to compel Defendants—the U.S. Department of State; the U.S. Embassy in Islamabad, Pakistan; U.S. Secretary of State Antony Blinken; and U.S. Ambassador to Pakistan Donald Blome—to adjudicate Ms. Idrees' visa application, alleging the adjudication has been unreasonably delayed.[2]  Mr. Aslam brings claims under the Mandamus

---

[1] (Compl. ¶¶ 1–2, 13, Doc. No. 2.)

[2] (*See generally* Compl., Doc. No. 2.)

1

Act, the Administrative Procedure Act ("APA"), and the due process clause of the United States Constitution.[3]

Defendants move to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[4]  The court held a hearing on July 6, 2023.[5]  Because the court lacks jurisdiction over Mr. Aslam's request for mandamus relief, and the complaint otherwise fails to state a claim under the APA or the due process clause, the court[6] GRANTS the motion to dismiss and DISMISSES this action without prejudice.

## BACKGROUND

1.  <u>Statutory and Regulatory Background</u>

The Immigration and Nationality Act ("INA")[7] authorizes the issuance of visas to various categories of immigrants, including relatives of U.S. citizens.[8]  A U.S. citizen seeking to obtain lawful permanent resident status for an immediate relative, including a spouse, must file a Form I-130, Petition for Alien Relative, with U.S. Customs and Immigration Services ("USCIS").[9]  If USCIS approves the petition, the case is forwarded to the National Visa Center ("NVC"), which

---

[3] (*See id.* ¶¶ 7, 20–38.)

[4] (Mot. to Dismiss, Doc. No. 28.)

[5] (*See* Minute Entry, Doc. No. 35.)

[6] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (*See* Doc. No. 22.)

[7] 8 U.S.C. § 1101 *et seq.*

[8] 8 U.S.C. § 1154; 8 C.F.R. § 204.1(a)(1), (b).

[9] 8 U.S.C. §§ 1154, 1151(b)(2)(A)(i) (defining a spouse as an "immediate relative" of a citizen for the purposes of Form I-130 petitioners); 8 C.F.R. § 204.1(a)(1).

is the State Department visa application processing center.[10]  The foreign spouse must then submit additional paperwork and fees to the NVC.[11]  After processing the requisite materials, the NVC schedules an interview for the applicant with a consular officer at the embassy with jurisdiction over the applicant's residence.[12]  Following the interview, the consular officer must either issue or refuse the visa.[13]

    2.  Factual Background

Mr. Aslam's complaint alleges as follows.  Mr. Aslam is a U.S. citizen.[14]  Mr. Aslam's spouse, Ms. Idrees, is a citizen of Pakistan and currently resides in Pakistan.[15]  Pakistan is a predominantly Muslim country.[16]

On March 16, 2020, Mr. Aslam filed a Form I-130 visa petition for Ms. Idrees with USCIS.[17]  USCIS approved the petition on January 6, 2021,[18] and the case was sent to the NVC for visa processing.[19]  Mr. Aslam alleges, upon information and belief, that the NVC completed

---

[10] 8 C.F.R. § 204.2(a)(3); *see also Rahimian v. Blinken*, No. 22-785 (BAH), 2023 U.S. Dist. LEXIS 4406, at *3 (D.D.C. Jan 10, 2023) (unpublished).

[11] *See* 22 C.F.R. § 42.67 (outlining application fees and additional documentation that an applicant must submit to NVC to complete the application); *see also Rahimian* 2023 U.S. Dist. LEXIS 4406, at *3.

[12] 22 C.F.R. § 42.62; *see also Rahimian*, 2023 U.S. Dist. LEXIS 4406, at *3.

[13] 22 C.F.R. § 42.81(a).

[14] (Compl. ¶ 1, Doc. No. 2.)

[15] (*Id.* ¶¶ 2, 12.)

[16] (*Id.* ¶ 12.)

[17] (*Id.* ¶ 13.)

[18] (*Id.* ¶ 15.)

[19] (*See id.* ¶ 16.)

its processing and sent the matter to the U.S. Embassy in Islamabad, Pakistan, to conduct an interview with Ms. Idrees.[20]  On February 17, 2022, the NVC confirmed it had received all fees, forms, and documents required for the interview.[21]  Since that time, the State Department has not conducted an interview with Ms. Idrees, and no final decision on her visa application has been issued.[22]  Mr. Aslam has contacted the embassy in Islamabad multiple times to no avail.[23]  Mr. Aslam contends the delay in processing the visa application has "irrevocably harmed" him by causing a loss of consortium and great emotional distress.[24]

Mr. Aslam alleges "[o]n information and belief" that Ms. Idrees' visa application has been intentionally delayed due to a policy known as the Controlled Application Review and Resolution Program ("CARRP") because she is from a predominantly Muslim country.[25]  Mr. Aslam's allegations related to CARRP are addressed in further detail below.

 3. <u>Mr. Aslam's Claims</u>

Mr. Aslam's complaint asserts two claims for relief.  First, Mr. Aslam claims Defendants have unreasonably delayed adjudication of the visa application in violation of the APA.[26]  Second, he claims Defendants' delay and failure to act on the visa application violate his rights

---

[20] (*See id.*)

[21] (*Id.* ¶ 17.)

[22] (*See id.* ¶ 18.)

[23] (*See id.* ¶ 19.)

[24] (*Id.* ¶ 38.)

[25] (*See id.* ¶¶ 25–26.)

[26] (*See id.* ¶¶ 20–34.)

under the Fifth Amendment due process clause.[27]  Mr. Aslam also references the Mandamus

Act[28] in the jurisdiction section of his complaint.[29]  Mr. Aslam asks the court to issue a "writ of

mandamus" compelling Defendants to either (1) adjudicate Ms. Idrees' visa application within

sixty days, (2) issue an immigrant visa to Ms. Idrees, or (3) explain the cause and nature of the

delay.[30]  Seemingly in the alternative, Mr. Aslam asks the court to "take jurisdiction of this

matter and adjudicate [Ms.] Idrees' immigrant visa pursuant to the Court's declaratory judgment

authority."[31]

      Although not listed as a separate claim, in his request for relief Mr. Aslam also seeks a

declaratory judgment that (1) the CARRP policy "violates the INA and its implementing

regulations; Article 1, Section 8, Clause 4 of the United States Constitution; the Fifth

Amendment to the United States Constitution; and the APA," and (2) "Defendants violated the

APA by adopting CARRP without promulgating a rule and following the process for notice and

comment by the public."[32]  He asks the court to order Defendants to rescind CARRP because

they failed to follow the process for notice and comment.[33]  Finally, he asks the court to enjoin

---

[27] (*See id.* ¶¶ 35–38.)

[28] 28 U.S.C. § 1361.

[29] (*See* Compl. ¶ 7, Doc. No. 2.)

[30] (*Id.*, Request for Relief ¶¶ 5, 7, 8.)

[31] (*Id.*, Request for Relief ¶ 6.)

[32] (*Id.*, Request for Relief ¶ 2.)

[33] (*Id.*, Request for Relief ¶ 4.)

Defendants from applying CARRP to the processing and adjudication of Ms. Idrees' application.[34]

## LEGAL STANDARDS

Rule 12(b)(1) permits dismissal for lack of subject-matter jurisdiction.[35]  A motion to dismiss under Rule 12(b)(1) may take one of two forms.[36]  "A facial attack looks only to the factual allegations of the complaint in challenging the court's jurisdiction."[37]  "A factual attack, on the other hand, goes beyond the factual allegations of the complaint and presents evidence in the form of affidavits or otherwise to challenge the court's jurisdiction."[38]  As set forth below, Defendants' only argument regarding jurisdiction is that the court lacks jurisdiction to issue a writ of mandamus under the Mandamus Act because an alternative remedy is available under the APA.[39]  This argument is based solely on the allegations in the complaint and, therefore, presents a facial attack.

Rule 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted."[40]  To avoid dismissal under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face."[41]  The court accepts all well-pleaded factual

---

[34] (*Id.*, Request for Relief ¶ 3.)

[35] Fed. R. Civ. P. 12(b)(1).

[36] *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012).

[37] *Id.* (internal quotation marks omitted).

[38] *Id.* (internal quotation marks omitted).

[39] (*See* Mot. to Dismiss 2, 6, Doc. No. 28.)

[40] Fed. R. Civ. P. 12(b)(6).

[41] *Hogan v. Winder*, 762 F.3d 1096, 1104 (10th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).

allegations as true and draws all reasonable inferences in the Plaintiff's favor.[42]   However, the

court need not accept a Plaintiff's conclusory allegations as true.[43]

Under Rule 12(d), if "matters outside the pleadings are presented to and not excluded by

the court" on a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment

under Rule 56."[44]   However, materials subject to judicial notice may be considered without

converting a motion to dismiss to one for summary judgment.[45]   As explained below, while both

parties submitted materials outside the pleadings, some of these materials are subject to judicial

notice, and consideration of the other materials is unnecessary to the resolution of the motion.

Therefore, the motion to dismiss is not converted to a summary judgment motion.

## ANALYSIS

In their motion to dismiss, Defendants first argue the court lacks jurisdiction to issue a

writ of mandamus under the Mandamus Act because an alternative remedy is available under the

APA.[46]   Second, Defendants argue Mr. Aslam fails to state a claim for unreasonable delay under

the APA.[47]   Third, Defendants argue Mr. Aslam's allegations regarding the CARRP policy fail

---

[42] *Wilson v. Montano*, 715 F.3d 847, 852 (10th Cir. 2013).

[43] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[44] Fed. R. Civ. P. 12(d).

[45] *See Hodgson v. Farmington City*, 675 F. App'x 838, 840–41 (10th Cir. 2017) (unpublished).

[46] (Mot. to Dismiss 6, Doc. No. 28.)

[47] (*Id.* at 6–12.)

to state a cognizable claim.[48]   Finally, Defendants argue Mr. Aslam fails to state a due process

claim because he has no constitutionally protected liberty interest in the visa application.[49]

      1.  <u>Request for a Writ of Mandamus</u>

      Defendants argue the court lacks jurisdiction to issue a writ of mandamus requiring

Defendants to adjudicate the visa petition because an equivalent, alternative remedy is available

under the APA.[50]   In response, Mr. Aslam argues he adequately pleaded the elements required

for a writ of mandamus; availability of relief under the APA does not preclude a writ of

mandamus; and the court has jurisdiction under both the APA and the Mandamus Act.[51]

      Under the Mandamus Act,[52] federal district courts have "jurisdiction to issue a writ of

mandamus 'to compel an officer or employee of the United States or any agency thereof to

perform a duty owed to the plaintiff.'"[53]   "To be eligible for mandamus relief, the petitioner must

establish (1) that he has a clear right to relief, (2) that the respondent's duty to perform the act in

---

[48] (*Id.* at 12–13.)

[49] (*Id.* at 13–14.)

[50] (*Id.* at 6.)

[51] (Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Opp'n") 8–10, Doc. No. 29.)

[52] 28 U.S.C. § 1361.

[53] *Ford v. Pryor*, 552 F.3d 1174, 1178 (10th Cir. 2008) (quoting 28 U.S.C. § 1361).

question is plainly defined and peremptory, and (3) that he has no other adequate remedy."[54]

Thus, a writ of mandamus "is not available when review by other means is possible."[55]

The APA permits judicial review of agency action and allows a court to "compel agency action unlawfully withheld or unreasonably delayed."[56]  The Tenth Circuit has held that "[t]he availability of a remedy under the APA technically precludes [a plaintiff's] alternative request for a writ of mandamus."[57]  Indeed, "Section 706(1) of the APA incorporates the traditional requirements for mandamus relief—a discrete, legally required action that the agency has failed

---

[54] *Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005).  Some Tenth Circuit decisions have treated this test as jurisdictional:

> Because of its unique nature, we have evaluated a district court's jurisdiction over a mandamus request in an anomalous manner.  "The test for jurisdiction [under § 1361] is whether mandamus would be an appropriate means of relief."  As a result, a failure to demonstrate entitlement to relief may preclude jurisdiction.

*Smilde v. Herman*, No. 99-1217, 1999 U.S. App. LEXIS 33402, at *8 (10th Cir. Dec. 21, 1999) (unpublished) (alteration in original) (quoting *Marquez-Ramos v. Reno*, 69 F.3d 477, 479 n.3 (10th Cir. 1995)); *see also Carpet, Linoleum & Resilient Tile Layers, etc. v. Brown*, 656 F.2d 564, 567 (10th Cir. 1981) ("[T]he issue . . . is whether defendants here have failed to discharge a duty owed to plaintiffs which Congress has directed them to perform.  The district court correctly resolved this issue as jurisdictional.").  Other Tenth Circuit decisions have not addressed whether this test is jurisdictional in holding that the existence of an alternative remedy precludes mandamus relief.  *See, e.g.*, *Audubon of Kan., Inc. v. United States Dep't of Interior*, 67 F.4th 1093, 1111 n.10 (10th Cir. 2023); *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997); *W. Shoshone Bus. Council v. Babbitt*, 1 F.3d 1052, 1059 (10th Cir. 1993).  Where at least some Tenth Circuit cases treat the elements required for mandamus relief as jurisdictional, they are considered jurisdictional here.

[55] *W. Shoshone Bus. Council*, 1 F.3d at 1059 (citing *Kerr v. U.S. Dist. Ct.*, 426 U.S. 394, 403 (1976)).

[56] 5 U.S.C. § 706(1); *see also* 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.").

[57] *Mt. Emmons Mining Co.*, 117 F.3d at 1170; *see also Audubon of Kan., Inc.*, 67 F.4th at 1111 n.10 ("When review by other means, such as under the APA, is possible, mandamus isn't available.").

to perform."[58]  Further, a mandatory injunction under the APA is "essentially in the nature of mandamus relief."[59]

Mr. Aslam's request for mandamus relief is precluded by the availability of judicial review under the APA.  In *Sawan v. Chertoff*,[60] a court addressed a challenge to delayed adjudication of an immigration application, where the plaintiff sought relief under both the Mandamus Act and the APA.[61]  The court concluded the Mandamus Act claim must be dismissed where it was essentially coextensive with the APA claim:

> The duty [the plaintiff] is seeking to enforce through a mandamus writ is the USCIS's duty of timely performance under the APA. . . .  As a result, the mandamus claim adds nothing to the APA claim and should be dismissed.  The APA provides a remedy for unlawfully delayed agency action; mandamus is not necessary for relief.[62]

The same reasoning applies here.  Mr. Aslam's request for a writ of mandamus is based on allegations that Defendants have unreasonably delayed adjudication of the visa application—the same allegations supporting his APA claim.  Because the APA provides a mechanism for judicial review of agency action unlawfully withheld or unreasonably delayed, mandamus relief is precluded.[63]

---

[58] *Audubon of Kan., Inc.*, 67 F.4th at 1111 n.10.

[59] *Mt. Emmons Mining Co.*, 117 F.3d at 1170.

[60] 589 F. Supp. 2d 817 (S.D. Tex. 2008).

[61] *See id.* at 825–26.

[62] *Id.* (citation omitted).

[63] *See Mt. Emmons Mining Co.*, 117 F.3d at 1170.

This is true even where Mr. Aslam fails to state a claim under the APA (as addressed below).  In *Audubon of Kansas, Inc. v. United States Department of Interior*,[64] the Tenth Circuit held mandamus relief was precluded where the plaintiff brought an unsuccessful APA claim for agency action unlawfully withheld:

> When review by other means, such as under the APA, is possible, mandamus isn't available.  Audubon tried and failed to establish a failure-to-act claim under § 706(1).  It can't then turn to mandamus relief as an alternative.[65]

Likewise, here, mandamus relief is precluded because the APA provides the proper mechanism for Mr. Aslam to raise a claim of unreasonable agency delay—even though his allegations are ultimately insufficient to support an APA claim.

For these reasons, Mr. Aslam's request for mandamus relief is dismissed for lack of subject-matter jurisdiction under Rule 12(b)(1).

2.  <u>APA Claim for Unreasonable Delay</u>

Defendants argue Mr. Aslam fails to state a claim for unreasonable delay under the APA because the delay alleged in this case does not qualify as unreasonable.[66]

The APA requires agencies to "proceed to conclude a matter presented to [them]" in a "reasonable time,"[67] and authorizes reviewing courts to "compel agency action unlawfully

---

[64] 67 F.4th 1093 (10th Cir. 2023).

[65] *Id.* at 1111 n.10 (citation omitted); *see also W. Shoshone Bus. Council*, 1 F.3d at 1059 ("Because review is possible under the APA after plaintiffs have followed the procedures of 25 C.F.R. pt. 83, mandamus is not available.").

[66] (*See* Mot. to Dismiss 6–12, Doc. No. 28.)

[67] 5 U.S.C. § 555(b).

withheld or unreasonably delayed."[68]  The distinction between "unlawfully withheld" and "unreasonably delayed" depends on whether there is a statutory deadline to act:

> [I]f an agency has no concrete deadline establishing a date by which it must act, and instead is governed only by general timing provisions—such as the APA's general admonition that agencies conclude matters presented to them "within a reasonable time," *see* 5 U.S.C. § 555(b)—a court must compel only action that is delayed unreasonably.  Conversely, when an entity governed by the APA fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action and courts, upon proper application, must compel the agency to act.[69]

Here, there is no concrete deadline by which Defendants must schedule a visa interview or adjudicate a visa application,[70] and Mr. Aslam relies only on the APA's general requirement for agencies to conclude matters "within a reasonable time."[71]  Thus, although Mr. Aslam references both prongs of section 706(1) in his complaint,[72] he cannot state a viable claim for agency action unlawfully withheld.  His APA claim is properly construed as one for unreasonable delay.

In *Qwest Communications International, Inc. v. Federal Communications Commission*,[73] the Tenth Circuit held courts evaluating claims of unreasonable delay of agency action under

---

[68] 5 U.S.C. § 706(1).

[69] *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1998).

[70] *See Rahimian*, 2023 U.S. Dist. LEXIS 4406, at *14–16 (evaluating failure to schedule a consular interview and adjudicate a visa application under the "unreasonable delay" prong of § 706(1), and finding "Congress has established no firm timetable for processing the visa request at issue" (citation omitted)).

[71] 5 U.S.C. § 555(b); (Compl. ¶ 21, Doc. No. 2).

[72] (Compl. 5, Doc. No. 2 (identifying the first claim for relief as "Agency Action Unlawfully Withheld and Unreasonably Delayed").)

[73] 398 F.3d 1222 (10th Cir. 2005).

section 706(1) should consider the following five factors, drawn from the so-called *TRAC* factors

articulated by the District of Columbia Circuit:[74]

> (1) the extent of the delay, (2) the reasonableness of the delay in the context of the legislation authorizing agency action, (3) the consequences of the delay, [] (4) administrative difficulties bearing on the agency's ability to resolve an issue[,] . . . [and (5)] the complexity of the task envisioned by a court's remand order.[75]

Considering these factors, Mr. Aslam fails to state a claim for unreasonable delay based

on the delay in adjudicating Ms. Idrees' visa application.

### A.  Extent and Reasonableness of the Delay

The first two factors—the extent and reasonableness of the delay—are often analyzed

together,[76] and the parties do so in their briefing.[77]  Accordingly, these factors are analyzed

---

[74] *See Telecomms. Research & Action Ctr. v. Fed. Commc'ns Comm'n*, 750 F.2d 70 (D.C. Cir. 1984) [*TRAC*]; *see also W. Rangeland Conservation Ass'n v. Zinke*, 265 F. Supp. 3d 1267, 1278 (D. Utah 2017) (noting the *Qwest* factors are based on the *TRAC* factors, which are "widely accepted as a touchstone for evaluating" claims of unreasonable agency delay).  The *TRAC* factors are as follows:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80 (internal quotation marks and citations omitted).

[75] *Qwest Commc'ns Int'l*, 398 F.3d at 1239 (citing *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149–50 (D.C. Cir. 1992)).

[76] *See, e.g.*, *W. Rangeland Conservation Ass'n*, 265 F. Supp. 3d at 1288.

[77] (*See* Mot. to Dismiss 7–9, Doc. No. 28; Opp'n 10–11, Doc. No. 29.)

together here.  In evaluating these factors, "[t]he court must first ascertain the length of time that has elapsed since the agency came under a duty to act, and then determine the reasonableness of the delay . . . in the context of the statute which authorizes the agency's action."[78]

As an initial matter, the parties dispute how to calculate the length of the delay in this case.  Defendants contend the delay should be calculated from February 17, 2022—the date Mr. Aslam alleges the NVC confirmed it had received all required fees, forms, and documentation— because this is when Ms. Idrees became eligible for an interview.[79]  Mr. Aslam acknowledges "[t]he case was documentarily qualified" on February 17, 2022.[80]  But at the hearing, he argued the delay should be calculated from January 6, 2021, the date the petition was approved by USCIS and sent to the State Department (specifically, to the NVC),[81] because the State Department is the agency responsible for conducting the consular interview and making a final adjudication of the visa application.

In *Rahimian v. Blinken*,[82] which addressed a similar claim of delay in scheduling a consular interview in connection with a Form I-130 petition, the D.C. District Court calculated the delay beginning from the date the visa petition was approved by USCIS, which the court

---

[78] *W. Rangeland Conservation Ass'n*, 265 F. Supp. 3d at 1288 (second alteration in original) (internal quotation marks and citations omitted).

[79] (*See* Mot. to Dismiss 8, Doc. No. 28; Compl. ¶ 17, Doc. No. 2 ("On February 17, 2022, the NVC confirmed that they received all the fees, forms, and documents that are required prior to attending an immigrant visa interview at a U.S. Embassy.").)

[80] (Opp'n 4, Doc. No. 29.)

[81] (*See* Compl. ¶ 15, Doc. No. 2.)

[82] 2023 U.S. Dist. LEXIS 4406 (D.D.C. Jan 10, 2023) (unpublished).

described as the "last government action" in the case.[83]  The court acknowledged the "foreign spouse must then submit additional paperwork and fees to NVC" before an interview is scheduled,[84] but did not provide a date when the plaintiff was documentarily qualified.  By contrast, in *Ghadami v. United States Department of Homeland Security*,[85] which addressed a delay in determining whether a visa applicant qualified for a waiver of ineligibility following a consular interview, the D.C. District Court calculated the delay beginning from the date the applicant was informed he was being considered for a waiver—more than a year after USCIS approved the Form I-130 petition.[86]

Here, Mr. Aslam's claim is based on the delay in conducting a consular interview and rendering a final decision on Ms. Idrees' application.[87]  Unlike in *Rahimian*, the parties agree on the date Ms. Idrees was documentarily qualified for a consular interview: February 17, 2022.[88]  As of that date, the State Department was under a duty to proceed with a consular interview and a final decision on Ms. Idrees' application.  Thus, using February 17, 2022 as a start date, the

---

[83] *See id.* at *4 (identifying July 24, 2019, as the date USCIS approved the petition), *14 n.6 (stating the "last government action" was in July 2019); *see also Arab v. Blinken*, 600 F. Supp. 3d 59, 63, 68 n.7 (D.D.C. 2022) (calculating a delay in scheduling a consular interview from the date USCIS approved the visa petition).

[84] *See Rahimian*, 2023 U.S. Dist. LEXIS 4406, at *3.

[85] No. 19-00397 (ABJ), 2020 U.S. Dist. LEXIS 47623 (D.D.C. March 19, 2020) (unpublished).

[86] *See id.* at *20 & n.7 (noting the applicant was informed that he was being considered for the waiver in March 2018, and calculating the delay from that date); *see also id.* at *6 (stating the petition was approved in November 2016).

[87] (*See* Compl. ¶ 18, Doc. No. 2 ("The State Department has not conducted [Ms.] Idrees's visa interview and the agency has refused to issue a decision on this case.").)

[88] (*See id.* ¶ 17; Mot. to Dismiss 8, Doc. No. 28; Opp'n 4, Doc. No. 29.)

delay in this case has persisted for nineteen months.[89]  But calculating the delay from the date USCIS approved the petition is also useful for comparison to other cases which have used USCIS approval as the start date.  More than thirty-two months have elapsed since USCIS approved Mr. Aslam's petition on January 6, 2021, and submitted the matter to the NVC.

As noted above, Congress has established no firm deadline for processing a visa application or scheduling a consular interview.[90]  Instead, "Congress has given 'agencies wide discretion in the area of immigration processing.'"[91]  "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide."[92]  While "[n]o bright lines exist in this context," "[d]istrict courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable."[93]  Courts considering claims similar to Mr. Aslam's have found delays of thirty months and forty-one months in conducting a consular interview following USCIS approval of an I-130 petition not unreasonable as a matter of law.[94]  And courts considering other

---

[89] The delay is calculated through the date of this order.  *See Rahimian*, 2023 U.S. Dist. LEXIS 4406, at *14 (calculating the delay through the date of the order); *Ghadami*, 2020 U.S. Dist. LEXIS 47623, at *20 (same).

[90] *See Rahimian*, 2023 U.S. Dist. LEXIS 4406, at *15–16.

[91] *Id.* at *16 (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017)).

[92] *Id.* at *17 (citation omitted).

[93] *Id.* at *17–18 (second alteration in original) (citations omitted); *see also Yavari v. Pompeo*, No. 2:19-cv-02524-SVW-JC, 2019 U.S. Dist. LEXIS 216070, at *21 (C.D. Cal. Oct. 10, 2019) (unpublished) (same); *Skalka*, 246 F. Supp. 3d at 154 (concluding based on "comparable cases" that "a delay of [two years] does not typically require judicial intervention" in the immigration context).

[94] *See Rahimian*, 2023 U.S. Dist. LEXIS 4406, at *18, 24 (finding a forty-one-month delay in scheduling a consular interview insufficient to state an APA claim for unreasonable delay under the *TRAC* factors); *Arab*, 600 F. Supp. 3d at 68, 72 (finding a thirty-month delay in scheduling a

visa-related delays—specifically, consular delays in determining eligibility for a waiver following a consular interview—have found twenty-five-month delays not unreasonable.[95]  By comparison, thirty-two months have elapsed since Mr. Aslam's petition was approved by USCIS, and only nineteen months have elapsed since Ms. Idrees was documentarily qualified for a consular interview.  Thus, the delay alleged in this case is similar to or shorter than delays other courts have found reasonable in the context of visa adjudication.

     Mr. Aslam argues other courts have found delays of more than one year unreasonable in the immigration context.[96]  But all the cases Mr. Aslam cites to support this proposition involved delays of at least *two* years (and several involved delays of four years).[97]  Here, the delay since Ms. Idrees was documentarily qualified for a consular interview is less than two years.  More importantly, all the cases Mr. Aslam cites qualitatively differ from this case because they addressed applications for lawful permanent residency, for which Congress has set a "normative

---

consular interview insufficient to state an APA claim for unreasonable delay under the *TRAC* factors).

[95] *See Ghadami*, 2020 U.S. Dist. LEXIS 47623, at *20, 23–24 (applying the *TRAC* factors); *Bagherian v. Pompeo*, 442 F. Supp. 3d 87, 94 (D.D.C. 2020) (applying the *TRAC* factors).

[96] (*See* Opp'n 11 & n.64, Doc. No. 29.)

[97] *See Ren v. Mueller*, No. 6:07-cv-790-Orl-19DAB, 2008 U.S. Dist. LEXIS 4300, at *32–33 (M.D. Fla. Jan. 20, 2008) (unpublished) (four-year delay in completing FBI name check for lawful permanent residency application); *Mazouchi v. Still*, No. C-06-07915 RMW, 2007 U.S. Dist. LEXIS 53999, at *11–12 (N.D. Cal. July 10, 2007) (unpublished) (four-year delay in completing FBI security clearance for lawful permanent residency application); *Konchitsky v. Chertoff*, No. C-07-00294 RMW, 2007 U.S. Dist. LEXIS 53998, at *13–15 (N.D. Cal. July 10, 2007) (unpublished) (two-year delay in completing FBI name check for lawful permanent residency application); *Huang v. Chertoff*, No. C 07-0277 JF, 2007 U.S. Dist. LEXIS 101235, at *6 (N.D. Cal. June 25, 2007) (unpublished) (two-year delay in processing lawful permanent residency application); *Gelfer v. Chertoff*, No. C 06-06724 WHA, 2007 U.S. Dist. LEXIS 26466, at *5–6 (N.D. Cal. Mar. 22, 2007) (unpublished) (two-year delay in completing FBI name check for lawful permanent residency application).

expectation" of a reasonable processing time of no more than 180 days.[98]  This timing expectation does not apply to the State Department's scheduling of visa application interviews.[99]  As set forth above, cases addressing consular delays in processing visa applications have concluded delays longer than the one alleged here were not unreasonable.  Mr. Aslam has cited no cases addressing comparable delays finding otherwise.

Where other courts have found visa-adjudication delays longer than the one alleged here were not unreasonable, the first two *Qwest* factors weigh against Mr. Aslam.

### B.  Consequences of the Delay

The third *Qwest* factor requires consideration of the consequences of the delay.[100]  "In general, the more drastic the consequences resulting from a given delay, the less likely that such a delay will be found to be justifiable."[101]  "[D]elays that might be altogether reasonable in the sphere of economic regulation are less tolerable when human lives are at stake."[102]

Mr. Aslam alleges the delay in adjudicating the visa application has "irrevocably harmed [him] by causing a loss of consortium between [Mr. Aslam] and [Ms.] Idrees," among other things.[103]  He also alleges the delay has caused him "great emotional distress."[104]  Undoubtedly, prolonged separation from one's spouse is a severe consequence.  Courts considering similar

---

[98] *See Mazouchi*, 2007 U.S. Dist. LEXIS 53999, at *9 (citing 8 U.S.C. § 1571).

[99] *See Rahimian*, 2023 U.S. Dist. LEXIS 4406, at *16–17.

[100] *Qwest Commc'ns Int'l*, 398 F.3d at 1239.

[101] *W. Rangeland Conservation Ass'n*, 265 F. Supp. 3d at 1289.

[102] *Id.* (citation omitted).

[103] (Compl. ¶ 38, Doc. No. 2.)

[104] (*Id.*)

18

allegations of delay have found the analogous *TRAC* factors weighed in the plaintiff's favor.[105] Defendants argue this factor weighs against Mr. Aslam because he is in the same position as "tens of thousands of families around the world" who suffer the same injury while waiting for visa applications to be adjudicated.[106]  But the fact that Mr. Aslam's circumstances are not unique does not render the consequences of prolonged spousal separation less severe.  The third *Qwest* factor weighs in Mr. Aslam's favor.

 In opposition to the motion to dismiss, Mr. Aslam submitted his own affidavit and unsworn letters from a neurologist and a therapist which provide additional details regarding the impact of Mr. Aslam's separation from his wife.[107]  Specifically, Mr. Aslam asserts he suffered a mini stroke in September 2018, he has a history of anxiety-induced migraines and depression, these conditions are exacerbated by his separation from Ms. Idrees, and the separation has negatively impacted his job performance and his plans to start a family.[108]  However, Mr. Aslam

---

[105] *See, e.g.*, *Rahimian*, 2023 U.S. Dist. LEXIS 4406, at *20–21 (finding the third and fifth *TRAC* factors (whether human health and welfare are at stake and the nature and extent of the interests prejudiced by the delay) weighed in the plaintiff's favor where the separation from his spouse "put a strain on the couple financially and emotionally, delayed his wife's education, and prevented the couple from being able to start a family"); *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020) (finding the third and fifth *TRAC* factors weighed in the plaintiff's favor in light of the prolonged and indefinite separation of spouses); *but see Memon v. Blinken*, No. 22-0754 (CKK), 2023 U.S. Dist. LEXIS 17016, at *7 (D.D.C. Feb. 1, 2023) (unpublished) ("In general, concerns about separation from family . . . are insufficient to weigh in favor of the plaintiff.").

[106] (Mot. to Dismiss 9–10, Doc. No. 28 (quoting *Memon*, 2023 U.S. Dist. LEXIS 17016, at *7).)

[107] (Ex. A to Opp'n, Aff. of Muhammad Aqeel Aslam ("Aslam Aff."), Doc. No. 29-1; Ex. B to Opp'n, Letter from David S. Peterson, M.D. dated March 26, 2023, Doc. No. 29-2 at 3; Ex. C. to Opp'n, Letter from Jared Taylor, MSW, CSW dated Aug. 31, 2021, Doc. No. 29-3.)  Mr. Aslam also submitted a medical record from an office visit with the neurologist, which does not mention the spousal separation.  (*See* Ex. B to Opp'n, Record dated Jan. 12, 2023, Doc. No. 29-2 at 1–2.)

[108] (*See* Opp'n 11–12, Doc. No. 29; Aslam Aff. ¶¶ 12–16, Doc. No. 29-1.)

does not offer any grounds to permit consideration of these materials outside the pleadings in the context of a Rule 12(b)(6) motion to dismiss.  Consideration of these materials would require converting Defendants' motion to a motion for summary judgment,[109] but both parties indicated at the hearing that they opposed this option.  In any event, consideration of these materials is unnecessary where Mr. Aslam's allegations in the complaint are sufficient, at the pleading stage, to establish this factor weighs in his favor. Thus, the extra-pleading materials submitted by Mr. Aslam are not considered.[110]

Based on Mr. Aslam's allegations of harm due to prolonged spousal separation, the third *Qwest* factor weighs in his favor.

### C. *Administrative Difficulties Bearing on the Agency's Ability to Resolve an Issue*

The fourth *Qwest* factor requires evaluation of the "administrative difficulties bearing on the agency's ability to resolve an issue."[111]  The court should consider "any plea of administrative error, administrative convenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources."[112]

---

[109] *See* Fed. R. Civ. P. 12(d).

[110] Even if these materials were considered, courts have found similar allegations of exacerbation of medical conditions due to spousal separation insufficient to tilt the balance of factors in a plaintiff's favor.  *See, e.g.*, *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-1262 (RC), 2021 U.S. Dist. LEXIS 242386, at *21–22, 24 (D.D.C. Dec. 20, 2021) (unpublished) (finding the third and fifth *TRAC* factors favored the plaintiff where spousal separation led to medical diagnoses of hypertension, depressive disorder, and generalized anxiety disorder, but concluding a twenty-five month delay in processing a visa application was insufficient to state a claim under the APA based on a balance of factors).

[111] *Qwest Commc'ns Int'l*, 398 F.3d at 1239.

[112] *W. Rangeland Conservation Ass'n*, 265 F. Supp. 3d at 1291 (quoting *In re Int'l Chem.*, 958 F.2d at 1149–50); *see also Rahimian*, 2023 U.S. Dist. LEXIS 4406, at *18 (considering "the

Defendants assert the COVID-19 pandemic and specific challenges at the U.S. Embassy in Islamabad have caused significant administrative difficulties in processing visa applications.[113]  In support of these assertions, Defendants ask the court to take judicial notice of information posted on official government websites regarding the suspension and resumption of visa services, visa backlog statistics, and embassy closures and staffing shortages.[114]  Other courts have taken judicial notice of similar information from government websites in considering claims of unreasonable delay in processing visa applications.[115]  Accordingly, the court takes judicial notice of the information from government websites cited by the Defendants.

As set forth in Defendants' motion, the State Department suspended routine visa services at all embassies and consulates at the outset of the COVID-19 pandemic.[116]  A phased resumption of visa services began in July 2020,[117] but the suspension and continued restrictions

---

complexity of the task at hand . . . and the resources available to the agency" in determining the reasonableness of the delay (citation omitted)).

[113] (*See* Mot. to Dismiss 3–4, 9–11, Doc. No. 28.)

[114] (*See id.* at 2 n.3.)

[115] *See, e.g.*, *Rahimian*, 2023 U.S. Dist. LEXIS 4406, at *4–6 (taking judicial notice of similar information from government websites in ruling on a Rule 12(b)(6) motion to dismiss a claim of unreasonable delay in processing a visa application); *see also id.* at *4 n.1 ("The Court may take judicial notice of information posted on official public websites of government agencies."); *Ghadami*, 2020 U.S. Dist. LEXIS 47623, at *21 (considering government statistics regarding the number of visa waiver applications in ruling on a Rule 12(b)(6) motion to dismiss).

[116] *See Suspension of Routine Visa Services*, U.S. Dep't of State—Bureau of Consular Affairs (July 22, 2020), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/visas-news-archive/suspension-of-routine-visa-services.html [https://perma.cc/4JVL-7W76].

[117] *See id.*

created a significant worldwide backlog in processing visa applications.[118]  At the time Ms.

Idrees became documentarily qualified for an interview, there were 436,700 eligible applicants

worldwide waiting for an interview to be scheduled.[119]  In addition to these backlogs, staffing

shortages at the U.S. Embassy in Islamabad have contributed to lengthy wait times for

interviews.[120]  Defendants also contend the suspension of operations at the U.S. Embassy in

Kabul, Afghanistan in August 2021[121] required the embassy in Islamabad to allocate visa

services to support the adjudication of immigrant visas for certain Afghans.[122]  This is borne out

by the public data on the State Department's website.[123]

---

[118] *See Update on Worldwide Visa Operations*, U.S. Dep't of State—Bureau of Consular Affairs (Oct. 21, 2022), https://travel.state.gov/content/travel/en/News/visas-news/update-on-worldwide-visa-operations.html [https://perma.cc/Z2VE-P25J].

[119] *See* NVC Immigrant Visa Backlog Report for March 2022, U.S. Dep't of State—Bureau of Consular Affairs, https://travel.state.gov/content/dam/visas/iv-backlog-report/IV-Report-March-2022.pdf [https://perma.cc/8QVV-KXJR].

[120] *See Immigrant Visas*, U.S. Embassy & Consulates in Pakistan, https://pk.usembassy.gov/visas/immigrant-visas/ [https://perma.cc/QC5R-6NBR] (last visited Sept. 21, 2023) ("U.S. Embassy Islamabad is processing immigrant visas across all categories. However, with significant backlogs in most categories and continuing staffing shortages, wait times for interviews are lengthy.").

[121] *See U.S. Embassy in Afghanistan Status*, U.S. Embassy in Afghanistan, https://af.usembassy.gov/u-s-embassy-in-afghanistan-status/ [https://perma.cc/3S9E-PUKJ] (last visited Sept. 21, 2023).

[122] (*See* Mot. to Dismiss 4 & n.13, Doc. No. 28.)

[123] *See Monthly Immigrant Visa Issuance Statistics*, U.S. Dep't of State—Bureau of Consular Affairs, https://travel.state.gov/content/travel/en/legal/visa-law0/visa-statistics/immigrant-visa-statistics/monthly-immigrant-visa-issuances.html [https://perma.cc/ERS7-8KPV] (last visited Sept. 21, 2023) (showing a substantial increase in SQ visas issued by the U.S. embassy in Islamabad in 2022 and 2023: from 17 total in 2021, to 2,882 in 2022, to 4,867 from January through July 2023 (the most recent report available)); *Immigrant Visa Symbols*, U.S. Dep't of State, https://travel.state.gov/content/dam/visas/Statistics/Immigrant-Statistics/MonthlyIVIssuances/Immigrant%20Visa%20Symbols.pdf [https://perma.cc/MT5Q-

Defendants argue these administrative difficulties are unprecedented and have caused the delay in conducting a consular interview of Ms. Idrees.[124]  In recent decisions, courts considering similar arguments have found administrative difficulties in processing visa applications caused by the COVID-19 pandemic weighed heavily in favor of the government.[125]  Mr. Aslam cites older cases finding a lack of resources failed to excuse unreasonable delays by USCIS in adjudicating applications for permanent residency.[126]  However, none of these cases addressed consular delays in adjudicating visa applications, and none considered the recent impacts of the COVID-19 pandemic.  Thus, the cases cited by Mr. Aslam have limited applicability to the

_____

35VV] (last visited Sept. 21, 2023) (showing SQ visas are available to certain Iraqis or Afghans employed by or on behalf of the U.S. government, and their spouses and children).

[124] (*See* Mot. to Dismiss 10–11, Doc. No. 28.)

[125] *See Memon*, 2023 U.S. Dist. LEXIS 17016, at *6 ("Defendant simply continues to face an extraordinary backlog of visas across the world arising from the shutdown in global services during the height of the COVID-19 pandemic.  Although it is unfortunate that this backlog has coincided with Plaintiffs' applications, there is nothing about those circumstances, even as merely pled, that permit judicial intervention." (internal quotation marks and citation omitted)); *Rahimian*, 2023 U.S. Dist. LEXIS 4406, at *18–19 (finding operational impacts of the COVID-19 pandemic caused delays in scheduling of consular interviews, and weighing this "decisively" in favor of the government).

[126] (*See* Opp'n 12 & n.73, Doc. No. 29); *Zhou v. Fed. Bureau of Investigation*, No. 07-cv-238-PB, 2008 U.S. Dist. LEXIS 46186, at *22–23 (D.N.H. June 12, 2008) (unpublished) ("[T]he fact that the relevant agencies lack sufficient resources to timely process all adjustment of status applications is ultimately a problem for the political branches, not the courts, to solve. It is not the aggrieved applicants who have created this problem, and it would not be appropriate for the courts to shift the burdens of this political failure onto the shoulders of individual immigrants."); *Aslam v. Mukasey*, 531 F. Supp. 2d 736, 744 (E.D. Va. 2008) ("Bureaucratic inadequacy is not a justification, especially because the costs of noncompliance are imposed on the applicant."); *Alkeylani v. Dep't of Homeland Sec.*, 514 F. Supp. 2d 258, 266 (D. Conn. 2007) ("While [a lack of resources] may be a legitimate policy crisis, the Court will not excuse Defendants from their statutory duty and let the cost fall on immigrant plaintiffs."); *Tang v. Chertoff*, 493 F. Supp. 2d 148, 158 (D. Mass. 2007) (describing lack of resources as a "policy crisis" which did not excuse the government from its statutory duty to process a permanent residency application within a reasonable time).

circumstances presented here.  The recent cases addressing circumstances similar to Mr. Aslam's case are more persuasive.

The judicially-noticed information referenced by Defendants indicates the COVID-19 pandemic, staffing shortages, and the closure of the Kabul embassy have caused substantial administrative difficulties in scheduling consular interviews and processing visa applications at the U.S. embassy in Islamabad.  Accordingly, this factor weighs heavily in favor of Defendants.

### D.  Complexity of the Task Envisioned by a Court's Remand Order

The final factor is "the complexity of the task envisioned by a court's remand order."[127] "[S]uch an inquiry requires evaluation of the logistical implications of a mandatory injunction for both the targeted agency and the court."[128]  "[E]valuation of this factor requires frank acknowledgement of the fact that mandatory injunctive relief is necessarily disruptive of agency priorities and programming."[129]  "Consequently, 'it is clear that a court-imposed deadline for agency action constitutes an extraordinary remedy.'"[130]

Defendants argue granting the requested relief would result in a reordering of the State Department's priorities because it would unfairly give Mr. Aslam and Ms. Idrees priority over tens of thousands of equally deserving families and couples.[131]  Mr. Aslam contends this argument, if accepted, would prevent any plaintiff suffering an unreasonable delay in the

---

[127] *Qwest Commc'ns Int'l*, 398 F.3d at 1239.

[128] *W. Rangeland Conservation Ass'n*, 265 F. Supp. 3d at 1295.

[129] *Id.*

[130] *Id.* (quoting *Qwest Commc'ns Int'l*, 398 F.3d at 1238–39).

[131] (Mot. to Dismiss 11, Doc. No. 28.)

adjudication of a visa application from bringing suit, because the State Department could merely argue the plaintiff was not the first person in line for adjudication.[132]

Requiring Defendants to adjudicate a single visa application does not appear, on its face, to be a particularly complex or onerous task. Nevertheless, courts addressing unreasonable-delay claims in this context have been reluctant to grant such relief where doing so would "allow[] the plaintiffs to jump the line, functionally solving their delay problem at the expense of other similarly situated applicants."[133] In *Rahimian*, for example, the court found a similar *TRAC* factor conclusively favored the defendants, noting they "face[d] an extraordinary backlog of visas" and finding "deference must be given to the State Department's priority-setting and resource-allocation decisions."[134] Courts have also found this factor favored defendants where plaintiffs did not allege they were treated differently than other visa applicants in similar circumstances and did not point to any unique considerations warranting expedited review.[135]

As set forth above, Defendants face a significant worldwide backlog of visa applications as well as administrative difficulties specifically affecting the Islamabad embassy. Mr. Aslam

---

[132] (Opp'n 13, Doc. No. 29.)

[133] *Ghadami*, 2020 U.S. Dist. LEXIS 47623, at *25 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016)); *see also Giliana v. Blinken*, 596 F. Supp. 3d 13, 22 (D.D.C. 2022) ("[T]he Court lacks a basis to reorder the State Department's priorities by allowing this application to jump in front of others in line.").

[134] 2023 U.S. Dist. LEXIS 4406, at *21 (addressing the fourth *TRAC* factor: "the effect of expediting delayed action on agency activities of a higher or competing priority" (citation omitted)).

[135] *See Giliana*, 596 F. Supp. 3d at 22 (noting the plaintiff did not allege his fiancée's visa application was being treated differently from anyone else who had a similar visa application at the same embassy); *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 52 (D.D.C. 2021) (noting the plaintiff did not "point to any unique considerations that warrant an expedited review of his petition" and did not "argue that the Government has treated him differently than any of the other petitioners who are facing similar circumstances" (internal quotation marks omitted)).

has not alleged the delay in this case is unique or exceeds the delays faced by thousands of other visa applicants.  Granting the requested relief would require the State Department to prioritize Ms. Idrees' application at the expense of others similarly situated.  Under these circumstances, this factor weighs in favor of Defendants.

Contrary to Mr. Aslam's argument, this does not mean all unreasonable-delay claims where the applicant is not "first in line" are insulated from judicial review.  Other courts have rejected this argument, noting this consideration is only one of several factors and plaintiffs may overcome it, for example, by showing they were singled out for bad treatment.[136]  Mr. Aslam has not done so here.

### E.  Balance of Factors

Considering all these factors, Mr. Aslam fails to state a claim for unreasonable delay under the APA.  The first and second factors—the extent and reasonableness of the delay— weigh against Mr. Aslam, where Congress has not provided a timeframe for adjudication of visa applications, and other courts considering similar claims have found longer delays than the one alleged here were not unreasonable as a matter of law.  The fourth factor—administrative difficulties—also weighs against Mr. Aslam, where Defendants face substantial backlogs in processing visa applications due to the COVID-19 pandemic, the closure of the Kabul embassy, and staffing shortages at the Islamabad embassy.  The fifth factor—complexity of a remand order—further weighs against Mr. Aslam, where an injunction would require the State Department to prioritize Ms. Idrees' application ahead of other similarly situated applicants, even though Mr. Aslam has not alleged differential treatment.  Only the third factor—consequences of

---

[136] *E.g.*, *Palakuru*, 521 F. Supp. 3d at 53 (citing *In re Barr Labs., Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991).

the delay—favors Mr. Aslam.  But although prolonged spousal separation is a severe

consequence, it is not enough to outweigh all the other factors, particularly where it is the same

consequence suffered by many other applicants facing similar delays.

This conclusion is in line with other cases addressing similar claims of unreasonable

delay in adjudicating visa applications.[137]  Notably, Mr. Aslam fails to identify any case finding

a comparable visa-adjudication delay sufficient to state a claim for unreasonable delay under the

APA.

For all these reasons, Mr. Aslam fails to state a claim under the APA.

3. <u>Challenge to CARRP Policy</u>

Defendants next argue Mr. Aslam's allegations related to CARRP are speculative and fail

to state a claim.[138]

Mr. Aslam alleges "[o]n information and belief" that Ms. Idrees' application has been

intentionally delayed based on CARRP because Ms. Idrees is from a predominantly Muslim

country.[139]  According to Mr. Aslam, CARRP is a Department of Homeland Security ("DHS")

policy which "intentionally delays the applications of applicants such as [Ms.] Idrees due to

security concerns."[140]  He alleges "CARRP prohibits USCIS field officers from approving an

application with a potential 'national security concern,' instead directing officers to deny the

application or delay adjudication—often indefinitely—in violation of the INA."[141]  Mr. Aslam

---

[137] *See Rahimian*, 2023 U.S. Dist. LEXIS 4406, at *24; *Arab*, 600 F. Supp. 3d at 72.

[138] (Mot. to Dismiss 12–13, Doc. No. 28.)

[139] (Compl. ¶ 26, Doc. No. 2.)

[140] (*Id.* ¶ 25.)

[141] (*Id.* ¶ 28.)

argues CARRP's "national security concerns" are "based on deeply-flawed and expansive government watchlists, and other vague and overbroad criteria."[142]  According to Mr. Aslam, "USCIS data reveals that between FY2008 and FY2012, more than 19,000 people from twenty-one Muslim-majority country or regions were subjected to CARRP."[143]  Mr. Aslam claims, "[u]pon information and belief," that USCIS and the State Department "are and have been complicit" in applying this policy to delay the processing of Ms. Idrees' visa application.[144]

Mr. Aslam fails to state a claim for intentional delay based on CARRP.  As an initial matter, Mr. Aslam alleges CARRP is a policy of DHS and USCIS (a DHS agency)—but neither DHS nor USCIS is a defendant is this case.  Thus, allegations that DHS and USCIS are applying the policy unlawfully are of no consequence here.[145]  Mr. Aslam's allegation that the State Department is "complicit" in applying this policy is vague, conclusory, and lacks factual support.

Even assuming the State Department utilizes CARRP, Mr. Aslam fails to provide sufficient factual support for his allegation that CARRP has been applied to Ms. Idrees' application.  Instead, he relies only on "information and belief" and the fact that Ms. Idrees is from a majority-Muslim country to support this conclusory allegation.[146]  Numerous other courts

---

[142] (*Id.* ¶ 29.)

[143] (*Id.* ¶ 30.)

[144] (*Id.* ¶ 27.)

[145] *See Rahimian*, 2023 U.S. Dist. LEXIS 4406, at *26 (finding allegations that DHS and USCIS applied CARRP unlawfully to be "of no consequence" where officials from those agencies had been dismissed as defendants).

[146] (Compl. ¶ 26, Doc. No. 2.)

have found nearly identical allegations to be conclusory and insufficient to state a claim.[147]  In

*Giliana v. Blinken*,[148] for example, the court found a plaintiff's allegation "on information and

belief" that his fiancée's visa application was intentionally delayed due to CARRP because she

was from a predominantly-Muslim country insufficient to state a claim.[149]  The court also noted

"the mere presence of delay" was not "inherently suggestive of CARRP being applied,"

particularly where USCIS had already approved the petition.[150]  Likewise, here, Mr. Aslam's

petition has been approved by USCIS, and the allegation that Ms. Idrees is from a

majority-Muslim country is insufficient to support an inference that CARRP has been applied to

her.  Mr. Aslam's remaining allegations regarding CARRP are merely general descriptions of the

policy and fail to support his assertion that CARRP has been applied to Ms. Idrees,

---

[147] *See Rahimian*, 2023 U.S. Dist. LEXIS 4406, at *26–27 ("Plaintiff's CARRP claim fails to provide sufficient factual support and instead relies 'on information and belief' that '[d]efendants are intentionally delaying this visa application because of an application of the CARRP program.' . . .  Given the absence of any factual predicate, defendants' motion to dismiss the CARRP claim is granted." (first alteration in original) (citations omitted)); *Arab*, 600 F. Supp. 3d at 68 ("Plaintiff has not set forth sufficient factual allegations to support his CARRP claim, relying instead 'on information and belief' that defendants 'are intentionally delaying this visa application because of an application of the CARRP program.'  The complaint, however, contains no allegations to support that USCIS and the Department of Homeland Security are still involved or are using CARRP 'to investigate or adjudicate' the visa application at this point in the processing." (citations omitted)); *Ghadami*, 2020 U.S. Dist. LEXIS 47623, at *16 ("While plaintiffs allege in their complaint that 'on information and belief . . . [d]efendants are internationally delaying a response to the Department of State in regard to [Ghadamy's] visa application pursuant to the CARRP program,' they have not set forth any factual allegations to support that conclusion." (alterations in original) (citation omitted)).

[148] 596 F. Supp. 3d 13 (D.D.C. 2022).

[149] *Id.* at 23.

[150] *Id.*

specifically.[151]  Where Mr. Aslam's allegation that CARRP has been applied to Ms. Idrees'

application is conclusory and lacks a factual predicate beyond "information and belief," the court

need not accept this allegation as true.[152]  Therefore, Mr. Aslam fails to state a claim that

Defendants have intentionally delayed adjudication of Ms. Idrees' application based on CARRP.

      In his request for relief, Mr. Aslam also asks the court to invalidate CARRP, asserting the

policy is unconstitutional, was adopted in violation of the APA's notice and comment

procedures, and violates the INA.[153]  But where Mr. Aslam has failed to adequately allege

CARRP has been applied to Ms. Idrees' application, he lacks standing to pursue a claim to

invalidate it.[154]

      For these reasons, Mr. Aslam fails to state any plausible claim for relief related to

CARRP.

      4.  <u>Due Process Claim</u>

      Finally, Defendants argue Mr. Aslam fails to state a claim under the due process

clause.[155]  Mr. Aslam claims that, as a U.S. citizen, he has a protected liberty interest in his

spouse's visa application, which gives rise to a right to constitutionally adequate procedures in

---

[151] *See Al-Saadoon v. Barr*, 973 F.3d 794, 804 (8th Cir. 2020) (dismissing CARRP claim where the plaintiffs "provide[d] broad allegations of how the CARRP program works, but they fail[ed] to allege how CARRP individually impacted their immigration proceedings").

[152] *See Hall*, 935 F.2d at 1110 ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. . . .  [T]he court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." (citations omitted)).

[153] (*See* Compl., Request for Relief ¶¶ 2, 4, Doc. No. 2.)

[154] *See Ghadami*, 2020 U.S. Dist. LEXIS 47623, at *16.

[155] (Mot. to Dismiss 13–14, Doc. No. 28.)

its adjudication.[156]  He alleges this right has been violated due to the delay in adjudicating the

visa application.[157]  Defendants contend Mr. Aslam has no constitutionally protected liberty

interest with respect to the visa application because issuance of a visa is a discretionary

decision.[158]  Defendants also argue, even if Mr. Aslam has a "minimal" procedural due process

right to meaningful review of the visa application, this right has not been violated because there

has been no unreasonable delay.[159]

      "In order to make out a claim for a violation of due process, a claimant must have a

liberty or property interest in the outcome of the proceedings."[160]  "But in immigration

proceedings, a petitioner has no liberty or property interest in obtaining purely discretionary

relief."[161]  And "[b]ecause aliens do not have a constitutional right to enter or remain in the

United States, the only protections afforded are the minimal procedural due process rights for an

opportunity to be heard at a meaningful time and in a meaningful manner."[162]

      Here, Mr. Aslam's I-130 petition has already been approved, and his due process claim is

based on the delay in adjudicating Ms. Idrees' visa application.  Thus, Mr. Aslam must show he

has a liberty or property interest in the adjudication of his spouse's visa application.  The Tenth

---

[156] (Opp'n 13–14, Doc. No. 29.)

[157] (*Id.* at 14; Compl. ¶¶ 36–37, Doc. No. 2.)

[158] (Mot. to Dismiss 13–14, Doc. No. 28.)

[159] (*Id.* at 14.)

[160] *Arambula-Medina v. Holder*, 572 F.3d 824, 828 (10th Cir. 2009) (quoting *Dave v. Ashcroft*, 363 F.3d 649, 652–53 (7th Cir. 2004)).

[161] *Id.* (quoting *Dave*, 363 F.3d at 653).

[162] *Id.* (internal quotation marks omitted).

Circuit has not addressed this issue.  Mr. Aslam relies on *Bustamante v. Mukasey*,[163] a Ninth Circuit decision which held a U.S. citizen had "a protected liberty interest in her marriage that [gave] rise to a right to constitutionally adequate procedures in the adjudication of her husband's visa application."[164]  A plurality of the Supreme Court has since concluded denial of a spousal visa application did not deprive the U.S. citizen spouse of a liberty interest giving rise to constitutional due process rights.[165]  Although the Supreme Court's plurality opinion on this issue is not controlling, some lower courts have likewise concluded a U.S. citizen has no liberty interest in a spouse's visa application.[166]  For example, in *Mahmood v. United States Department of Homeland Security*,[167] a court dismissed a claim, similar to Mr. Aslam's, that a U.S. citizen's procedural due process rights were violated by a twenty-five-month delay in adjudicating her spouse's visa application, finding no constitutionally-protected liberty or property interest at stake.[168]

Whether Mr. Aslam has a liberty interest in the adjudication of Ms. Idrees' visa application need not be resolved here.  Even assuming such an interest exists, Mr. Aslam has not

---

[163] 531 F.3d 1059 (9th Cir. 2008).

[164] *Id.* at 1062.

[165] *Kerry v. Din*, 576 U.S. 86, 101 (2015) (plurality opinion).

[166] *See, e.g.*, *Rohrbaugh v. Pompeo*, 394 F. Supp. 3d 128, 133 (D.D.C. 2019) ("[N]umerous courts in this district have ruled that a U.S. citizen has no constitutional right which is violated by the denial of a spouse's visa application."); *Napoletano v. Sessions*, No. 17-cv-000837-CMA, 2017 U.S. Dist. LEXIS 237418, at *10 (D. Colo. Nov. 3, 2017) (unpublished) ("[T]he denial of a spousal visa application does not constitute the deprivation of [the plaintiff's] fundamental liberty interest." (citing *Din*, 576 U.S. 86 (plurality opinion))).

[167] No. 21-1262 (RC), 2021 U.S. Dist. LEXIS 242386 (D.D.C. Dec. 20, 2021) (unpublished).

[168] *Id.* at *26–27.

adequately alleged the process afforded to Ms. Idrees is constitutionally inadequate.  Mr. Aslam's due process claim is based solely on the delay in adjudicating Mr. Idrees' application. But, as set forth above, the delay alleged here is not unreasonable.  In *Mahmood*, a court considering a similar claim found "failure to sufficiently plead that the delay in question was unreasonable [under the APA] also fails to establish a defect in the administrative process" for purposes of a due process claim.[169]  Mr. Aslam has cited no contrary authority supporting the proposition that a comparable delay in adjudicating a visa application violates procedural due process.  Under these circumstances, Mr. Aslam fails to state a claim for violation of his due process rights.

## CONCLUSION

The court lacks subject-matter jurisdiction over Mr. Aslam's request for mandamus relief, and Mr. Aslam's complaint otherwise fails to state a claim for relief under the APA or the due process clause.  Therefore, Defendants' motion to dismiss[170] is GRANTED, and this action is DISMISSED without prejudice.

DATED this 21st day of September, 2023.

BY THE COURT:

Daphne A. Oberg
United States Magistrate Judge

---

[169] *Id.* at *27 (internal quotation marks omitted).

[170] (Doc. No. 28.)